May it please the court. Mark Steffes is a 58 year old man from the western Iowa town of Carroll. He has a very lengthy history of mental illness and specifically paranoid schizophrenia. For that illness he has been committed to the same Iowa mental hospital on at least six and perhaps more occasions in the past. He's currently charged with felon in possession of a firearm in the northern district of Iowa. The district court has ruled that he's incompetent to stand trial based on his mental illness and it granted the government's motion to have Mr. Steffes involuntarily medicated to restore his trial competency. This appeal presents the issue of whether Mr. Steffes's case involves a compelling government interest such that it is one of the rare cases in which a court may order involuntary medication for trial competency purposes. The court's familiar with Sell v. United States, the governing case in this area of law and the must meet in order to win on a motion for involuntary medication for trial competency purposes. This appeal only pertains to one of those factors which in truth is a two-part factor on its own. At the threshold the government must prove that there is a significant government interest in prosecuting Mr. Steffes and then assuming that's true then the government must show that there are not special circumstances that negate that government interest in prosecution. The threshold question is pretty easy in this case because the answer is dictated by this court's authority already. Mr. Steffes is charged with an offense carrying a statutory maximum of 10 years in prison. This court in Mackey indicated that any offense that carries a 10-year statutory maximum is sufficiently serious such that the government has a interest in prosecution. So the threshold is an easy question. The tougher question is whether special circumstances negate the government's interest in prosecuting Mr. Steffes. And you believe that it's the government's burden to prove that the lack of special circumstances? I believe that it is your honor. It is a government correct your honor. It's a tricky issue because they're trying to prove a negative but at the same time it is the government's motion and case law from this court and others make it clear that it's the government government's burden throughout. So at the district court stage the government is obligated to prove the non-existence of special circumstances by clearing convincing evidence and then the balance of the special circumstances and the interest comes down to a legal issue and thus is subject to de novo review by this court. I'll first start with a special circumstance that has arisen since the parties submitted their briefs and I expect will be an issue that Mr. Wade addresses as well. At present Mr. Steffes is actually receiving anti-psychotic medication. What happened is we had the cell hearing at the district court level, the district court granted the government's cell motion and while this appeal was pending, the Bureau of Prisons at its Springfield facility held an administrative hearing regarding Mr. Steffes and specifically regarding whether he posed a risk of danger to himself such that involuntary medication was necessary to mitigate that danger. This is something that's authorized under the Supreme Court's opinion in Washington versus Harper. Harper again just deals with either dangerousness to the individual in a correctional setting or dangerousness to other individuals in the correctional setting and at this administrative hearing in March of this year the Bureau of Prisons decided that Mr. Steffes at this point represents a danger to himself because he was not eating and he was not complying with the prison's efforts to check on his physical health. So at present as I said Mr. Steffes is receiving medication based on this Washington versus Harper rationale and I'd ask the court to consider language at pages 181 to 183 of the Supreme Court's decision in cell where the Supreme Court discusses the relation between a Harper-based motivation for involuntary medication versus a cell-based motivation. They are different things but the Supreme Court tells courts at pages 181 to 183 that the government and courts should first look to a Harper-based rationale for involuntary medication before going to the more extreme measure of seeking involuntary medication for trial competency purposes. The government did that here. There was a Harper hearing preceding the cell litigation but at that previous point the Bureau of Prisons decided Mr. Steffes did not pose a risk of danger to himself or others in the correctional setting. Counsel so it's your position that we still have a live controversy and that this is not a moot case? We do have a live controversy because although in general we're talking about the same thing involuntary medication we're talking about different interests at play. So the reason Mr. Steffes is being involuntary medicated now is because the Bureau of Prisons has decided that it's in his best interest to ensure his health going forward. Whereas cell deals with generally whether it's in the government's interests or the public's interests to have Mr. Sell medicated for purposes of bringing him to trial. Now there could be a point at which Mr. Steffes is medicated pursuant to Harper and the Bureau of Prisons determines he's no longer a danger to himself. We still have the question of whether he can continue to be medicated for trial competency purposes. So that's why the issue is not mooted by the recent development. But it is a special circumstance that the court can consider and can consider whether remand is appropriate back to the district court basically to hold the case in abeyance to see how the Harper medication turns out and whether circumstances change. Because ultimately this is a very fact-intensive inquiry. It's very individual to Mr. Steffes's case and this development could change what's going to happen with this case. For what you've been saying it would seem that at a minimum we would remand if not moot at least remand because for one thing the the Harper medication may return them to competency so so cell becomes it does become moot. Or the doctors may say or you may want a hearing on the issue of the compatibility between the two medications because I know that also becomes a big issue in these cell hearings is the dangerousness of the medication particularly in combination with other medications they may be taking. I it seems to me that at a minimum remand would would be required in this case. I think that's exactly right Judge Molloy because this is there are so many different ways that this can go now that there is a Harper based rationale for medication and I do think that's why the Supreme Court said in cell that court should first look to Harper if that's not a basis for medication then we go to cell. This is unusual in that we look to Harper first it didn't provide a rationale the government went to cell the district court ruled that that did but now we're back at Harper because the Bureau of Prisons has determined that Mr. Steffes is a risk of danger to himself. But if you do look at that language at pages 182 to 183 I do think that remand is basically the minimum that this court can do at this stage. Moving beyond that there are special other special circumstances in Mr. Steffes' case that this court should consider if remand doesn't happen with relation to the cell issue. The first special circumstance I'd like to address because I don't think the district court paid enough attention to this are the individual facts and circumstances of what happened with respect to Mr. Steffes' alleged offense. And I do think it's really important to get into the facts of the alleged crime because cell makes clear that courts are to look to the individual facts and circumstances of the case whereas at the threshold we just consider whether in this case a 922g charge is sufficiently serious to possibly warrant involuntary medication. But then there's a wide variation of offenses that are charged under title 18 section 922g from we sometimes get homicide cases that are charged as 922g and we sometimes get cases of individuals who simply have no criminal history but they're in possession of marijuana of marijuana and a gun at the same time and they're charged under section 922g3. So looking at the specific facts and circumstances of Mr. Steffes' case you also have to consider his history and that doesn't bode in his favor because he does have a history of assault of conduct he has a prior federal felony firearm conviction but I'd ask the court to note that many of those things are quite dated and in fact since Mr. Steffes committed his previous federal firearm offense back in 2002 and then suffered conviction for that his only criminal history up into the current point is a 2007 conviction for possession of methamphetamine so there's been no recent violence with Mr. Steffes. And then with respect to what happened in the instant case this is a circumstance where Mr. Steffes is being prosecuted for a gun that was previously his and previously in police custody but then was released to a friend of his under his signature. I think anyone who's been involved with criminal prosecution or criminal defense knows that generally speaking if a gun was seized in connection with a a crime it's going to be forfeited it's not going to be returned to the defendant or an associate of his. Yet in this circumstance in a small Iowa town Mr. Steffes was essentially able to retake possession of a gun that was seized from him because unusually his gun was released to his friend based on his signature. That's at a minimum a mediating factor in my view given Mr. Steffes' mental state and and the circumstances there. The court should also consider the likelihood of civil commitment even if Mr. Steffes is not medicated to restore his trial competency. This is not a circumstance as sometimes occurs in other cases where the issue of civil commitment is uncertain. We can look to the past and know that Mr. Steffes is very likely to face some form of civil commitment even if he doesn't go to trial in this current federal case. He's been as I said committed at least six times under Iowa state law in the past perhaps more. If you look at the Bureau of Prison's most recent report regarding Mr. Steffes, this is Exhibit 7 at page 12 from the cell litigation, there's an indication the Bureau of Prisons would recommend that Mr. Steffes go through commitment proceedings pursuant to Title 18 United States Code Section 4246. So commitment under both state and federal law is a real possibility in Mr. Steffes' case and as the Supreme Court said in cell that lessens the government interest in continuing with a prosecution for an individual like Mr. Steffes. I'd also ask the court to consider the amount of time that Mr. Steffes has served in jail thus far. He was arrested back in April of 2015 and he's been in jail ever since. This court as I said first looks to the statutory maximum for an offense but if you look to this court's opinion in Nicholas at footnote 5, the estimated guideline range is still a relevant factor for the court's consideration in the special circumstances analysis. In this case the parties agree that Mr. Steffes has already served an above guideline sentence without being convicted. The district court essentially disregarded that in this case talking about the potential that Mr. Steffes would be placed on supervised release. That's a potential that exists in any case and that interest is certainly lesser in a case like this that's charged under Section 922G where the statutory that could last for the rest of his life and he'd be under a court's contempt power to continue to comply with mental health treatment and take his medications. If there are no further questions I'd reserve the remainder of my time for rebuttal. May it please the court. My name is Sean Wade. I'm an AUSA with the Northern District of Iowa who has handled this case primarily as the lead AUSA throughout its duration. We have a little bit of a unique case before this court both in type and in the I guess the procedural circumstances that now have unfolded. It's an involuntary medication case with an individual possessing a firearm by a felon charge and Mr. Steffes has been down that very road in the past, 2002 through 2004 as my colleague has indicated. He was charged similarly with possession of a firearm in that case with a prior domestic abuse conviction, this time possession of a firearm by the felon for that very federal conviction. Last time, 2002 or so, he was found to be incompetent and then treated. Again, it wasn't the exact same process that he's gone through here but he went through treatment largely while he was out on pretrial release for a period of time after being involuntarily or involuntarily civilly committed and then released. But after he was medicated on some of the very medications that were discussed at the cell hearing and placed in the recommendations by the psychiatrist and is adopted by with minor modifications the magistrate in the district court, he got better and was found competent, pled guilty to that charge. Here, we have similar conduct. That case involved possession of a firearm, also a knife, hunting knife. Here, he's found with a firearm, again a handgun and a large knife about 17 or 15 years later, 13 and 15 years later to his adjudication and offense conduct. But in this case, he also approached two different firearms dealers and asked to purchase essentially and inquired about an AR-15. That's a little different than his first offense where he get the offense conduct in this case is that he walks into the second gun store after everybody had been alerted to it and after he'd been informed that he could not have a firearm for all three reasons, he still inquires but brings in about an AR-15 but brings in a loaded handgun. That turns around, gives law enforcement a reason to go find him. He finds him with the handgun and the knife. That's where we're at as far as a factual case. He gets charged. We have a cell hearing. We've already run through that with prior counsel here. The issue really is whether or not the government's interest as found by both lower courts, whether or not that's undermined or rebutted in some way by the special circumstances. I need to talk just briefly because it was by changes to things. That's really not in the record but he had a prior Harper hearing and it was found that there was no grave danger to himself or to him or others in the incarceration setting. That was August of 2016. That changed in March of 2015. He's now being involuntarily medicated with a plan very much like what was originally recommended by the psychiatrist. He's had an administrative hearing subsequent to that to continue that and he's basically being treated. The problem is, and the question from the court was, is that moot the hearing at this point or moot the issue or does it require remand? Those are both very, very good considerations. Trouble is, we've only had two months of treatment. Based on his history in this record, it takes more than that in order to get a determination whether or not he's going to be found competent or not or whether or not there's going to be some difficulties with his treatment regimen as the court brought up a minute ago. One argument is that it could be remanded. As I understand it, he's making progress but we'll know in July-ish, four months approximately, whether or not that treatment is working or not working, whether or not it needs to be furthered or discontinued, but we don't know what that's going to be. We know, based on the record, that up to this point there was a basis for a cell, after going through the cell factors, for involuntary medication on all four of those factors, only one of which is being contested by this particular appeal. Turning to those special circumstances, the defendant first argues that it's a non-violent offense and then as a caveat to that, some police negligence. This court hasn't found that possession of firearm by a felon is a non-violent offense. It's looked at a number of other factors. The Nicholas case is somewhat instructive in regards to it. The Mackey case is also instructive. Both those cases find that a non-violent offense is a serious offense. It also discusses in, I believe it's Nicholas, that merely having threats, paper threats, there isn't any physical violence, does not necessarily mean it isn't a serious and violent offense or violent type of a crime. You got to look, I guess, to the circumstances of each charge and the underlying facts. In this case, we have a firearm involved. We have a history. I think the history has to be considered. We have an individual looking at AR-15s on two separate occasions after being told that he couldn't have a firearm. In addition, although it's dated, he has a past history of assaults, past history of assault domestics, past history of confrontational and odd behavior. We have incidents in 2000 where he calls the police to his house and it's an interference charge and such, but that he thinks something in the refrigerator is causing him to a great concern. He is arrested on that occasion. In 97, we have him going into a bank, pulling a gun, waving a gun, not pointing it at anyone, but threatening the local county attorney, threatening bank officials, and ultimately ending up with a firearms-based offense conviction. Let me just bring up one issue, Mr. Wade. The Supreme Court itself said, and I'm paraphrasing, that these should not become routine, that they are exceptional, and that involuntarily medicating someone with powerful psychotropic drugs is a very serious matter. But they become sort of routine because anytime you get a crime that's more than five years sentence, the government says you're entitled to it. In this case, by the time he gets to trial, he will have served way more than any sentences likely to be imposed. What's the point? Well, I agree with just about everything you just said, with the exception of I'm not sure whether we can say that he will have served or served a significantly greater sentence than what he would likely be ordered to serve. I think- Well, it's probably going to be well over 40 months. So when he gets to trial this fall, it'll be three and a half years, 42, 44 months. By the time he's sentenced, it might even be four years. Right. And we've acknowledged that his range is going to be somewhere in that, probably the 25 to 33 month range. I think it's potentially down as low as 15, could go a little higher. But what we argued before the magistrate court and the district court is that, and it was at least acknowledged that the potential sentence wasn't known, it was impossible to know. Although I will acknowledge that they both spent more time talking about supervised release as a concern and a recommendation for it and a concern for the government's interest and a recommendation by the court to follow the supervised release was another alternative to the sentence that would not be gotten by not involuntarily medicating him. I think that though, that there is a fairly significant chance that we're looking at a sentence at over 60 months with the, I think, clear under-representation of his criminal history based on his past history and then conduct up into including the offense conduct in this particular case. Basically, the record is filled with a lot of threats, violence, and confrontational behavior involving guns. That's a little different than some of these other cases where you have maybe gun possession, but you don't have all that kind of threats and the violence past. I understand some of it's dated, but it's extensive over time. When you look at the pretrial services report, which is in the record, even on his OWI offenses and driving offenses, there is conduct that lends itself to confrontational and assaultive or threat of assault type behavior. And I think that has to be taken into consideration for the potential sentence that might be imposed. Should this guy be in psychiatric treatment? I mean, he's probably, you talk about supervised release, but he's probably not supervisable. I mean, if you are mentally ill, it's very difficult for probation to supervise. I would say so. I mean, shouldn't he, I mean, isn't this, it just seems like this is not, you're trying to put a square peg into a round hole. You got a guy who probably has served more time than he's going to get sentenced to. He's probably not amenable to supervision. So he should really be, why aren't you moving towards getting them committed and getting them some treatment? Because that's where he, I mean, to me, that's what society needs. Well, I think that that can be accomplished by what we're trying to do. I think supervised release worked in the past. I mean, there is a history in the pretrial services report. It documents it. After that, in that 2002 case, but it wasn't, he didn't get convicted until 2004. He was supervised on a pretrial basis. Once he was released, he was in Cherokee mental health for a while, but then he was on an outpatient basis. That's where he took his medication and then became competent. And then he was on supervised release for three years. And he had no, he had some drug use problems that came up that's in the report, but nothing regarding violence towards others or behavior. And as counsel indicated, for a period of time after that, decent time after that, he didn't get into the, I guess, the threats, the violence, the threats of violence, the confrontational behavior again, until closer here to 2015, when he walks into the courthouse and makes some comments about wanting his guns again. And then immediately within a month is looking for AR-15s. I think there's a difference between that individual and those individuals that need pure mental health. I don't disagree with you. I'm seeing more cases where people are being evaluated for competency that have some backgrounds like this and other backgrounds. Most of those people are found competent, especially, especially about half of those people are going off to Buechner or Springfield and starting to take medication upon recommendations and they get found competent, at least with the medication regimen that they're followed. Where you have the person like Mr. Steffes who will not take the medication voluntarily, that's where you run into the difficulty of, and that's why it's a more rare circumstance. But I think he fits a rare circumstance with also the possibility and the past history, I shouldn't say possibility, probability based on his past history and his offense conduct of future potential violence. The other area in which the defense talks about special circumstances which have undermined the government's position is the likelihood of civil commitment. I know we've touched on that. The process for that is a little different, both on the federal level, it's dealing more with serious violence towards others. Counselor, in that regard, in light of what the U.S. Supreme Court has said in cell about the importance of the liberty interest at stake and that they don't want this to become a routine thing, how can we justify shifting the burden of proof to the defendant on that matter? As far as likelihood of... The civil commitment hearing? Yes. Well, I think that in the civil commitment hearing, the government would have to prove certain matters. But I'm talking about in the context of the special circumstances portion of the cell test. I don't know that we have shifted it to him so much as that I don't believe that the civil commitment possibility here or prospect is certain enough for us to know in order to say that it is a strong government interest in pursuing the prosecution in this case. The district court put special emphasis on the fact that there was uncertainty in that regard and that the defendant hadn't proved otherwise. Yes. And part of that was that the record basically from the institution, and I think it came from the, I think it's a psychology intern, may have been only briefly mentioned by the there was no record made by either the government or the defense regarding the prospects of that next step. I think the focus was on what they had done and what they're having to do basically for the Harper matter, which was negative at that time, obviously now positive for Harper needs, but or in the need for actual involuntary medication based on his previous history of paranoid schizophrenia, his consistent pattern with that again, and the fact that treatment had worked before. But they, they're essentially, essentially we just don't have the record here yet, whether or not there was a basis for a civil commitment hearing. It's a different set of facts. It's a different set of analysis. It focuses more, I mean, I know the Iowa statute focuses more on whether he can take care of himself and whether or not there's an emotional harm to other individuals and whether or not there's harm, he represents a risk to him, particularly and potentially others. I know that the federal matter looks more at whether or not there's harm to others and harm to property. It's a little bit more difficult to get a civil commitment on the federal side. The state side, again, is a little more general, but again, none of those really, if you look at the route, the record, there really is that evidence of that. And sadly, if he's getting better being involuntarily treated now, it's almost assuredly, you know, unlike defense position in their brief where they say it's, it's, it's, it's extremely likely that he'll be civilly committed. If he's already being involuntarily medically treated based on the gravely disabled nature of his condition, because he was emaciated and he couldn't, he lost a lot of weight and he couldn't respond to lab requests or even physical exams, if he gets better, then he certainly won't be civilly committed because he'll get better before the commitment process begins and there won't be a basis to commit him. So, as I said, it's a very unique set of facts, very unique set of procedures. We feel that I think at this point, based on the record that there is, there is a sufficient basis to affirm the district court and the analysis it provided, including its adoption of certain detailed findings by the magistrate court. However, things are changing. Thank you. I'll briefly touch on a few points raised by Mr. Wade. To be faithful to Sells' admonition that courts must consider the individual facts and circumstances of a case, this court cannot ignore the estimates that the parties have offered that are undisputed with regarding the possible guideline range that Mr. Steffes faces. This, the district court relied on a passage from this court's opinion in Mackey saying that we can't just assume that the defendant will receive a guideline sentence because we don't have all the information that a sentencing judge would have. This case is very different in that the district court probably has more information than a sentencing court would ordinarily have. We have a pre-sentence report from Mr. Steffes' previous case. That's Exhibit 9 in the Sell Litigation. We have a pretrial services report from the current case against Mr. Steffes with his criminal history, his mental health history, his family history, etc. That's Exhibit 10. We have extensive briefing about him, about his history, about his mental health history, about what he did. So this is a different circumstance than Mackey. There's lots of information and respectfully, I disagree with Mr. Wade. There's simply no basis based on what Mr. Steffes is alleged to have done this time to suggest that a court would think that a sentence two times above the top of the top possible guideline range would be appropriate. As far as likelihoodness of civil commitment, I want to touch on a point that Judge Gras raised. I'd ask the court to consider the Sixth Circuit's opinion in Grigsby. It's cited in my brief and I think it really hits the nail on the head that it is impossible for me to get up before a district court or before this court and say that civil commitment is inevitable. It is possible, though, for me to point to historical record and in particular the fact that Mr. Steffes has been civilly committed under Iowa law on at least six occasions and say, if passed as prologue, it's probably going to happen again. And I can point to the Bureau of Prison's own report, Exhibit 7 from the cell litigation that says 4246 litigation is likely if Mr. Steffes is not restored to trial competency. Finally, this issue of Mr. Steffes' general dangerousness pervades both, I think, the government's presentation and the district court opinions below. But it's important to keep in mind that if Mr. Steffes is deemed to be a danger, then he will not be released to the public. That's what Section 4246 proceedings are all about. Judge Molloy hit on this in a separate opinion in the Nicholas case and it certainly mitigates any risk when you know that this 4246 proceeding is a possibility if Mr. Steffes would pose a risk of danger to the public if released. If there are no questions, I'd ask the court to reverse the district court and remand for further proceedings. Thank you.